**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

| | |
|---|---|
| AGUSTIN ORTEGA-LOPEZ, *Petitioner*, v. LORETTA E. LYNCH, Attorney General, *Respondent*. | No. 13-71127 Agency No. A088-994-318 OPINION |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted July 8, 2016
Portland, Oregon

Filed August 23, 2016

Before: Harry Pregerson, Carlos T. Bea,
and John B. Owens, Circuit Judges.

Opinion by Judge Owens;
Concurrence by Judge Bea

## SUMMARY[*]

### Immigration

The panel granted Agustin Ortega-Lopez's petition for review of the Board of Immigration Appeals' published precedential decision, *Matter of Ortega-Lopez*, 26 I. & N. Dec. 99 (BIA 2013), which held that his conviction for sponsoring or exhibiting an animal in an animal fighting venture under 7 U.S.C. § 2156(a)(1) is a categorical crime involving moral turpitude.

The panel found that the IJ and BIA did not discuss how the statute of conviction, cockfighting, involves an action that affects a protected class of victim. The panel cited the finding in *Nunez v. Holder*, 594 F.3d 1124, 1131 (9th Cir. 2010), that "non-fraudulent crimes of moral turpitude almost always involve an intent to harm someone, the actual infliction of harm upon someone, or an action that affects a protected class of victim." The panel wrote that although this court's case law does not explicitly require the BIA to apply the language in *Nunez*, it thought a remand to consider the language was appropriate because the crime at issue involving harm to chickens is outside the normal realm of CIMTs.

Concurring fully in the majority opinion, Judge Bea wrote separately to emphasize the unsuitability of the *Taylor v. United States*, 495 U.S. 575 (1990), framework to determine whether a particular crime is one involving moral turpitude.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Navid David Shamloo (argued), N. David Shamloo, Esq., Portland, Oregon, for Petitioner.

Joanna L. Watson (argued), Trial Attorney; Ernesto H. Molina, Jr., Senior Litigation Counsel; Civil Division, Office of Immigration Litigation, United States Department of Justice, Washington, D.C.; for Respondent.

Thomas Hutchins and James Feroli, Immigrant & Refugee Appellate Center, Alexandria, Virginia, for Amici Curiae Thomas Hutchins, James Feroli, and Immigrant & Refugee Appellate Center.

**OPINION**

OWENS, Circuit Judge:

Agustin Ortega-Lopez, a Mexican citizen, contends that his misdemeanor conviction for participating in cockfighting in violation of the Unlawful Animal Venture Prohibition, 7 U.S.C. § 2156(a)(1), does not qualify as a categorical crime involving moral turpitude ("CIMT"). The Immigration Judge ("IJ") and Board of Immigration Appeals ("BIA") concluded that it did. We grant the petition and remand for further proceedings consistent with this opinion.

## I.  Factual and Procedural Background

### A.  Ortega-Lopez and Cockfighting

Ortega-Lopez came to the United States without permission in 1992.  He has three children who are United States citizens.  In 2008, Ortega-Lopez pled guilty to one misdemeanor count of cockfighting.  He was hardly the Don Corleone (or even the Fredo) of this enterprise. Rather, as the government's sentencing position detailed: "his involvement in the overall crime was relatively minor compared to" the other defendants in the case.  His punishment—one year of probation with no jail time—reflected his limited culpability. He has no other convictions.

### B.  Removal Proceedings

In March 2008, the Department of Homeland Security alleged that Ortega-Lopez was removable as "an alien present in the United States without being admitted or paroled."  *See* INA § 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i).  Ortega-Lopez filed an application for cancellation of removal under INA § 240(A)(b), 8 U.S.C. § 1229b(b).

On February 14, 2011, the IJ held that Ortega-Lopez was ineligible for cancellation of removal because his conviction was a CIMT.  *See* INA § 240(A)(b)(1)(C).  Applying *Taylor v. United States*, 495 U.S. 575 (1990), the IJ concluded that the conviction "categorically involves moral turpitude because it criminalizes willful conduct that is inherently base and depraved."  The IJ explained:

> Animal fights . . . serve no purpose other than entertainment.  Unlike  hunting  or  racing,

> animal fighting is a spectacle, the entire purpose of which is the intentional infliction of harm or pain on sentient beings that are compelled to fight, often to the death. The spectacle of forcing animals to cause each other extreme pain or death necessarily appeals to prurient interests.

Turning specifically to cockfighting, the IJ noted that all 50 states outlawed the practice and that society had found "animal fighting ventures morally reprehensible." The judge reasoned that because animal fighting constituted animal cruelty in many states, and courts had concluded that cruel acts towards children inhere moral turpitude, animal fighting, which also involved defenseless living beings akin to children, was necessarily morally turpitudinous. Ortega-Lopez appealed.

## C. Appeal to BIA

In a March 2013 published decision, the BIA agreed with the IJ that the offense of sponsoring or exhibiting an animal in an animal fighting venture was categorically a CIMT. Also applying the categorical approach, the BIA sought to "compare the statute of conviction to the generic definition of moral turpitude." *Rohit v. Holder*, 670 F.3d 1085, 1088 (9th Cir. 2012). The BIA defined moral turpitude as "conduct which is inherently base, vile, or depraved, and contrary to the accepted rules of morality and the duties owed between persons or to society in general." *Matter of Ajami*, 22 I. & N. Dec. 949, 950 (BIA 1999). The BIA concluded that animal fighting "clearly involves reprehensible conduct" and cited several cases describing dog fighting as "cruel" and "inhumane." *See, e.g.*, *United States v. Stevens*, 130 S. Ct.

1577, 1601–02 (2010) (Alito, J., dissenting); *United States v. Hackman*, 630 F.3d 1078, 1084 (8th Cir. 2011). Turning to cockfighting, the BIA, like the IJ earlier, emphasized that this practice had been outlawed in all 50 states and this "sweeping prohibition" confirmed that our society found it morally reprehensible. This petition timely followed.

## II. Discussion

Whether a crime involves moral turpitude is a question of law that we review de novo. *Latter-Singh v. Holder*, 668 F.3d 1156, 1159 (9th Cir. 2012). We afford deference under *Chevron v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), however, to the BIA's published determination that "specified conduct constitutes a CIMT," *Mendoza v. Holder*, 623 F.3d 1299, 1302 (9th Cir. 2010), unless the "BIA did not support its conclusion with any statutory interpretation or reasoning," *Rivera v. Lynch*, 816 F.3d 1064, 1071 (9th Cir. 2015).

Congress has declared cockfighting a scourge that warrants prosecution, and we have no quarrel with that.[1] Yet that is not our inquiry here—rather, we must determine whether the conviction at issue is a CIMT. In answering this question, the government urges us to hold that cockfighting is a vile and depraved practice, which in its view ends the story. It does not.

---

[1] Unlike dogfighting, which is illegal everywhere in the United States, cockfighting remains legal in Guam, the Northern Mariana Islands, Puerto Rico, and the U.S. Virgin Islands. *See White v. United States*, 601 F.3d 545, 549 (6th Cir. 2010).

We have recognized that whether a crime is a CIMT is a "nebulous question that we are required to answer on the basis of judicially established categories of criminal conduct." *Nunez v. Holder*, 594 F.3d 1124, 1127 (9th Cir. 2010). To interpret the entrails of *Taylor*, we employ the categorical approach, the modified categorical approach, and other mechanisms that the Supreme Court dictates (and then often undermines just a couple of Terms later). *See, e.g.*, *Almanza-Arenas v. Lynch*, 815 F.3d 469, 483 (9th Cir. 2015) (en banc) (Owens, J., concurring) (explaining that "[a]lmost every Term, the Supreme Court issues a 'new' decision with slightly different language that forces federal judges, litigants, lawyers and probation officers to hit the reset button once again" in determining whether a crime is a CIMT).

Fortunately, this case does not require another painful ascent of Mount *Taylor*. CIMTs fall into two categories: "[1] those involving fraud and [2] those involving grave acts of baseness or depravity." *Robles-Urrea v. Lynch*, 678 F.3d 702, 708 (9th Cir. 2012). The parties agree that only this second category is potentially in play here.

"[N]on-fraudulent crimes of moral turpitude almost always involve an intent to harm someone, the actual infliction of harm upon someone, or an action that affects a protected class of victim." *Nunez*, 594 F.3d at 1131. In their opinions, the IJ and BIA never discussed how the statute of conviction—cockfighting—involved a "protected class of victim." The government's briefing never addressed *Nunez*, and when asked about it at oral argument, government counsel had no answer.

While our case law does not explicitly require the BIA to apply this language in *Nunez*, we think a remand to consider

this language is appropriate here, as the crime at issue involving harm to chickens is, at first blush, outside the normal realm of CIMTs. *See Lopez v. Ashcroft*, 366 F.3d 799, 806–07 (9th Cir. 2004) (noting that remand is proper to permit BIA to consider question in the first instance); *see also Castrijon-Garcia v. Holder*, 704 F.3d 1205, 1213 (9th Cir. 2013) (reviewing BIA decision de novo and holding that simple kidnapping under California law was not a CIMT because it "does not require an intent to injure, actual injury, or a special class of victims" (citation omitted)); *Turijan v. Holder*, 744 F.3d 617, 621 (9th Cir. 2014) (reviewing unpublished BIA decision and holding that felony false imprisonment did not qualify as a CIMT because it does not require an intent to injure someone, an actual injury, or a protected class of victims); *Linares-Gonzalez v. Lynch*, 823 F.3d 508, 517–18 (9th Cir. 2016) (holding that BIA erred in determining that identity theft under California law was a CIMT where it "does not require 'intent to injure, actual injury, or a protected class of victim'" (citation omitted)). The answer cannot be that outlawing cockfighting in the 50 states automatically qualifies cockfighting as a CIMT—more is required. *See, e.g.*, *Navarro-Lopez v. Holder*, 503 F.3d 1063, 1071 (9th Cir. 2007) (en banc) (holding that a definition of moral turpitude that encompassed all criminal conduct would be overbroad and contrary to the intent of Congress), *overruled on other grounds by United States v. Aguila-Montes de Oca*, 655 F.3d 915 (9th Cir. 2011) (en banc).

**PETITION GRANTED AND REMANDED.**

BEA, Circuit Judge, concurring:

I concur fully in Judge Owens' opinion. I write separately only to emphasize the unsuitability of the *Taylor* framework for determining whether a particular crime is one involving moral turpitude. *See Ceron v. Holder*, 747 F.3d 773, 785–89 (9th Cir. 2014) (en banc) (Bea, J., dissenting); *Navarro-Lopez v. Gonzales*, 503 F.3d 1063, 1084–86 (9th Cir. 2007) (en banc) (Bea, J., dissenting) ("There is no generic federal crime of moral turpitude with elements similar to, or different from, a state crime of moral turpitude for the simple reason there is no state crime of moral turpitude. One has to have a *crime*, such as burglary, to use the *Taylor* categorical analysis.").