FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

AGUSTIN ORTEGA-LOPEZ,
                        *Petitioner*,

v.

WILLIAM P. BARR, Attorney
General,
                        *Respondent*.

No. 18-72441

Agency No.
A088-994-318

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted September 4, 2020
Pasadena, California

Filed October 20, 2020

Before: Ronald M. Gould and Sandra S. Ikuta, Circuit
Judges, and David A. Ezra,* District Judge.

Opinion by Judge Ikuta

---

*The Honorable David A. Ezra, United States District Judge for the District of Hawaii, sitting by designation.

## SUMMARY[**]

### Immigration

Denying Ortega-Lopez's petition for review of a decision of the Board of Immigration Appeals, the panel deferred to the BIA's conclusions that: 1) the offense of knowingly sponsoring or exhibiting an animal in a fighting venture under 7 U.S.C. § 2156(a)(1) is a crime involving moral turpitude; and 2) an alien who has been convicted of a crime involving moral turpitude, for which a sentence of one year or longer may be imposed, has been convicted of an offense under 8 U.S.C. § 1227(a)(2) that makes the alien ineligible for cancellation of removal under 8 U.S.C. § 1229b(b)(1)(C).

In according *Chevron* deference to the BIA's conclusion that 7 U.S.C. § 2156(a)(1) is a crime involving moral turpitude, the panel explained that the BIA considered *Nunez v. Holder*, 594 F.3d 1124 (9th Cir. 2010), which generalized that non-fraudulent crimes of moral turpitude almost always involve an intent to harm someone, the actual infliction of harm, or an action that affects a protected class of victims. The BIA concluded that the absence of an intent to injure, an injury to persons, or a protected class is not determinative, explaining that this court and the BIA have concluded that the *Nunez* categories are not exhaustive.

The panel also explained that the BIA provided a detailed explanation of its rationale and responded to this court's concern that a crime involving harm to chickens appeared to

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

be outside the normal realm of crimes involving moral turpitude. The BIA explained that the immorality of the conduct stemmed from its infliction of suffering on sentient beings, so it applied to animals involved in cockfighting, as well as domesticated animals. The BIA distinguished this conduct from practices, such as hunting and food production, that are harmful to animals but necessary or acceptable. The panel also rejected Ortega-Lopez's retroactivity challenge, concluding that the BIA did not change the applicable law.

The panel next addressed Ortega-Lopez's argument that his conviction did not make him ineligible for cancellation of removal. As relevant here, a cross-reference, 8 U.S.C. § 1229b(b)(1)(C), provides that an alien is not eligible for cancellation under § 1229b(b) if the alien has "been convicted of an offense under section . . . 1227(a)(2)." Section 1227(a)(2), in turn, makes an alien deportable if the alien is convicted of a crime involving moral turpitude committed within five years after the date of admission, and the conviction is one for which a sentence of one year or longer may be imposed. Ortega-Lopez argued that he had not been convicted of an offense under § 1227(a)(2) because the government did not prove that his crime was committed within five years after admission.

In *Matter of Cortez Canales*, 25 I. & N. Dec. 301 (BIA 2010), the BIA held that the cross-reference unambiguously incorporated only language specifically pertaining to the criminal offense, such as the offense itself and the sentence imposed or potentially imposed. However, this court in *Lozano-Arredondo v. Sessions*, 866 F.3d 1082 (9th Cir. 2017), after finding the cross-reference ambiguous, suggested that § 1229b(b)(1)(C) could be interpreted as incorporating the within-five-years element and altering the

meaning of "admission" in § 1227(a) to mean "entry." The court declined to defer to *Cortez Canales* and remanded for the BIA to reconsider its interpretation of "offense under" in § 1229b(b)(1)(C). In its decision in this case, *Matter of Ortega-Lopez*, 27 I. & N. Dec. 382 (BIA 2018), the BIA restated its interpretation from *Cortez Canales* and rejected the potential alternative interpretation suggested by *Lozano-Arredondo*.

The panel held that the BIA's interpretation in *Ortega-Lopez* was reasonable, explaining that the BIA held that construing the word "admission" to mean "entry" would be contrary to the overall purpose of the Illegal Immigration Reform and Immigration Responsibility Act of 1996, which replaced the term "entry" with "admission." Further, the BIA evaluated the legislative history cited in *Lozano-Arredondo* and concluded that it neither undermined *Cortez Canales* nor supported an alternative interpretation. Thus, the panel deferred to the BIA's conclusion that an alien is ineligible for cancellation of removal if the alien has been convicted of a crime involving moral turpitude for which a sentence of one year or more may be imposed, regardless whether the alien meets the immigration prerequisites for inadmissibility or deportability.

## COUNSEL

Geoffrey M. Doolittle (argued), Doolittle Legal LLC, Portland, Oregon, for Petitioner.

Sabatino F. Leo (argued), Senior Litigation Counsel; Anthony P. Nicastro, Assistant Director; Joseph H. Hunt, Assistant Attorney General; Office of Immigration Litigation, Civil

Division, United States Department of Justice, Washington, D.C.; for Respondent.

**OPINION**

IKUTA, Circuit Judge:

Ortega-Lopez, a native and citizen of Mexico, petitions for review of a ruling by the Board of Immigration Appeals (BIA) that he was ineligible for cancellation of removal under 8 U.S.C. § 1229b(b)(1). We hold that the BIA reasonably concluded that Ortega-Lopez had been convicted of a crime involving moral turpitude for which a sentence of one year or longer may be imposed based on his conviction under 7 U.S.C. § 2156(a)(1) (criminalizing specified conduct relating to animal fighting ventures). We also defer to the BIA's conclusion that an alien who has been convicted of such an offense is an alien "convicted of an offense under section . . . 1227(a)(2)," 8 U.S.C. § 1229b(b)(1)(C). Therefore, we deny the petition for review.

I

The question on appeal is whether Ortega-Lopez is ineligible for cancellation of removal under 8 U.S.C. § 1229b(b)(1) because he was "convicted of an offense under" 8 U.S.C. § 1227(a)(2) (listing grounds of deportability). To understand this question in context, we begin with some historical background.

Before enactment of the Illegal Immigration Reform and Immigration Responsibility Act of 1996 (IIRIRA), "United States immigration law established two types of proceedings

in which aliens can be denied the hospitality of the United States: deportation hearings and exclusion hearings." *Vartelas v. Holder*, 566 U.S. 257, 261 (2012) (quoting *Landon v. Plasencia*, 459 U.S. 21, 25 (1982)). "Exclusion hearings were held for certain aliens seeking entry to the United States, and deportation hearings were held for certain aliens who had already entered this country." *Id.*

Under pre-IIRIRA law, "entry" was defined as a person's physical entry into the United States, whether lawfully or unlawfully. 8 U.S.C. § 1101(a)(13) (1994) (defining "entry" to mean "any coming of an alien into the United States, from a foreign port or place"). Under this law, an alien who entered the United States could be charged with grounds of deportability in a deportation hearing. *See, e.g.*, *Mendoza v. INS*, 16 F.3d 335, 336–37 (9th Cir. 1994). An alien who was stopped at the border or a port of entry (even if subsequently paroled into the United States) could be charged with grounds of exclusion in an exclusion hearing. *See, e.g.*, *Ramirez-Durazo v. INS*, 794 F.2d 491, 495–97 (9th Cir. 1986). The government had the burden of proof at a deportation hearing, while the alien had the burden of proof at an exclusion hearing. *Compare Gameros-Hernandez*, 883 F.2d 839, 841 (9th Cir. 1989) (deportation), *with Clark v. Smith*, 967 F.2d 1329, 1331 (9th Cir. 1992) (exclusion). Because the government had to prove that any alien who had entered the United States met the requirements for deportation, an alien who entered unlawfully had an advantage over an alien stopped at the border. *See, e.g.*, *Ramirez-Durazo*, 794 F.2d at 496–97 & n.2.

IIRIRA amended this framework. Congress intended to eliminate the anomaly "under which illegal aliens who have entered the United States without inspection gain equities and

privileges in immigration proceedings that are not available to aliens who present themselves for inspection at a port of entry." *Torres v. Barr*, ___ F.3d ___, ___, 2020 WL 5668478, at *8 (9th Cir. 2020) (en banc) (quoting H.R. Rep. 104-469, pt. 1, at 225 (1996)); *see also Matter of Valenzuela-Felix*, 26 I. & N. Dec. 53, 60 n.7 (BIA 2012) (same). Therefore, Congress replaced the term "entry," *see* § 1101(a)(13) (1994), with the term "admission," § 1101(a)(13)(A) (stating that "[t]he terms 'admission' and 'admitted' mean, with respect to an alien, the lawful entry of the alien into the United States after inspection and authorization by an immigration officer"). IIRIRA also replaced the term "excludable aliens" with "inadmissible aliens," and replaced grounds for exclusion with grounds of inadmissibility. *See Xi v. INS*, 298 F.3d 832, 838 (9th Cir. 2002). Under this new framework, a person who physically entered the United States but was not admitted is subject to grounds of inadmissibility, rather than deportability, and has to bear the corresponding burden of proving admissibility. Congress also eliminated separate exclusion and deportation hearings, and it channeled all aliens into removal hearings. *Vartelas*, 566 U.S. at 262. Despite this procedural unification, the substantive bases for excluding and deporting aliens remained distinct and addressed in different statutory sections. *Judulang v. Holder*, 565 U.S. 42, 46 (2011). The list of offenses related to inadmissibility remained in 8 U.S.C. § 1182(a), and the list of offenses related to deportability remained in 8 U.S.C. § 1227(a). These lists are "sometimes overlapping and sometimes divergent." *Judulang*, 565 U.S. at 46.

Both inadmissible and deportable aliens may apply for cancellation of removal under § 1229b(b)(1). Under § 1229b(b)(1), the Attorney General has discretion to cancel

removal of an alien who is inadmissible or deportable if the alien meets four statutory requirements. One such requirement is that the alien "has not been convicted of an offense under section 1182(a)(2), 1227(a)(2), or 1227(a)(3) of this title."[1] § 1229b(b)(1)(C). The three cross-referenced sections list various criminal offenses. The section at issue here, § 1227(a)(2)(A)(i), relates to deportability and crimes involving moral turpitude:

> (i) Crimes of moral turpitude. Any alien who—
>
> (I) is convicted of a crime involving moral turpitude committed within five years (or 10 years in the case of an alien provided lawful permanent resident status under section 1255(j) of this title) after the date of admission, and
>
> (II) is convicted of a crime for which a sentence of one year or longer may be imposed,
>
> is deportable.

## II

We now turn to the facts of this case. Ortega-Lopez, a native and citizen of Mexico, unlawfully entered the United States in 1994. In January 2008, Ortega-Lopez was indicted on several criminal counts, including violations of 7 U.S.C.

---

[1] This requirement is subject to the domestic violence waiver not applicable here. § 1229b(b)(1), (5).

§ 2156(a)(1) for sponsoring or exhibiting an animal in an animal fighting venture. In 2009, Ortega-Lopez pleaded guilty to a single count under § 2156(a)(1) and 18 U.S.C. § 2(a) for knowingly aiding and abetting another person who sponsored or exhibited an animal in an animal fighting venture.[2]

While his criminal case was pending, the government commenced removal proceedings against Ortega-Lopez. Because Ortega-Lopez had not been admitted into the United States, he was subject to grounds of inadmissibility. The government served him with a notice to appear which charged him as being removable on the ground that he was an "alien present in the United States without being admitted or paroled." § 1182(a)(6)(A)(i). Ortega-Lopez conceded he was removable and applied for cancellation of removal under § 1229b(b)(1). The immigration judge (IJ) denied Ortega-Lopez's application for cancellation of removal on the ground that he had been convicted of a violation of § 2156(a)(1), a crime involving moral turpitude for which a sentence of a year or longer may be imposed. Ortega-Lopez appealed to the BIA. The BIA dismissed Ortega-Lopez's appeal, *Matter of Ortega-Lopez*, 26 I. & N. Dec. 99 (BIA 2013) (*Ortega-Lopez I* ).

We granted Ortega-Lopez's petition for review and remanded the case to the BIA for further consideration. *Ortega-Lopez v. Lynch*, 834 F.3d 1015, 1018 (9th Cir. 2016)

---

**[2]** The Government filed an unopposed motion to supplement the certified administrative record with the superseding information to which Ortega-Lopez pleaded guilty. ECF No. 21. The unopposed motion is **GRANTED** and the superseding information shall be considered as part of the administrative record.

(*Ortega-Lopez II* ).   We ordered the BIA to consider the language in *Nunez v. Holder*, 594 F.3d 1124 (9th Cir. 2010), which had conducted an overview of our cases and generalized that "non-fraudulent crimes of moral turpitude almost always involve an intent to harm someone, the actual infliction of harm upon someone, or an action that affects a protected class of victim."  594 F.3d at 1131.[3]  We also noted that "the crime at issue involving harm to chickens is, at first blush, outside the normal realm of CIMTs." *Ortega-Lopez II*, 834 F.3d at 1018.

On remand, the BIA issued a precedential decision reaffirming its dismissal of Ortega-Lopez's appeal. *Matter of Ortega-Lopez*, 27 I. & N. Dec. 382 (BIA 2018) (*Ortega-Lopez III* ).  The BIA explained its view that moral turpitude was broader than the categories identified by *Nunez*, and it concluded that § 2156(a)(1) was categorically a crime involving moral turpitude because the offense involved intentional conduct that was morally reprehensible.  *Id.* at 386–87.  It also addressed our intervening opinion in *Lozano-Arredondo v. Sessions*, 866 F.3d 1082 (9th Cir. 2017), and reaffirmed the interpretation of a prior BIA

---

[3] Based on its review, *Nunez* held that a conviction in California for indecent exposure was not categorically a crime involving moral turpitude, because the full range of conduct prohibited by the statute (which included nude dancing at bars) was not "base, vile, and depraved."  594 F.3d at 1133, 1136.  *Nunez* did not defer to the BIA's contrary decision, because it was unpublished and provided only conclusory analysis. *Id.* at 1133.   After the BIA issued a precedential opinion reaffirming its conclusion that the California indecent exposure statute was a crime involving moral turpitude, we deferred to the BIA's published opinion and overruled *Nunez*.  *See Betansos v. Barr*, 928 F.3d 1133, 1141–42 (9th Cir. 2019) (citing *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967 (2005)).

decision holding that the cross-reference in § 1229b(b)(1)(C) incorporated only "the offense-specific characteristics contained in the cross-referenced sections—that is, the listed generic offense and any corresponding sentencing requirements," but did not incorporate the requirement that the crime be "committed within five years . . . after the date of admission." *Ortega-Lopez III*, 27 I. & N. Dec. at 391–92 (citing *Matter of Cortez Canales*, 25 I. & N. Dec. 301, 307 (BIA 2010)). The BIA then determined that Ortega-Lopez was ineligible for cancellation of removal and dismissed his appeal. *Id.* at 398. Ortega-Lopez again petitions for review. We have jurisdiction under 8 U.S.C. § 1252(a).

## III

Ortega-Lopez raises two primary challenges to the denial of his application for cancellation of removal. First, he argues that 7 U.S.C. § 2156(a)(1) is not categorically a crime involving moral turpitude. Second, he argues that the BIA erred in concluding that he had been "convicted of an offense under section . . . 1227(a)(2)" because the government failed to prove that the crime was "committed within five years . . . after the date of admission," § 1227(a)(2)(A)(i). We consider each argument in turn.

## A

We first consider Ortega-Lopez's argument that his conviction for violation of § 2156(a)(1) was not a crime involving moral turpitude. We determine whether an offense is a crime involving moral turpitude by applying the categorical approach set forth in *Taylor v. United States*, 495 U.S. 575 (1990). *See Marmolejo-Campos v. Holder*, 558 F.3d 903, 912 (9th Cir. 2009) (en banc). Under the

categorical approach, we determine whether the crime of conviction contains all the elements of the generic federal offense; in general, we first define the elements of the federal generic offense, and then compare it to the statute of conviction. *Id.*

We accord *Chevron* deference to the BIA's exercise of its authority to give "ambiguous statutory terms concrete meaning through a process of case-by-case adjudication." *INS v. Aguierre-Aguierre*, 526 U.S. 415, 425 (1999); *Marmolejo-Campos*, 558 F.3d at 909. That means we are limited to determining whether the agency's interpretation of an ambiguous term in the Immigration and Naturalization Act (INA) "is based on a permissible construction of the statute." *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843 (1984). An agency's interpretation is permissible so long as it is "not clearly contrary to the plain meaning of the statute." *Parrilla v. Gonzales*, 414 F.3d 1038, 1041 (9th Cir. 2005).

We have acknowledged that the phrase "crime involving moral turpitude" is inherently ambiguous, and neither we nor the BIA have established any clear-cut criteria "for determining which crimes fall within that classification and which crimes do not." *Nunez*, 594 F.3d at 1130. Because the BIA has authority to interpret the term "crime involving moral turpitude" as used in the INA, interpretations provided by the BIA in published opinions are entitled to deference under *Chevron*. *Ceron v. Holder*, 747 F.3d 773, 778 (9th Cir. 2014) (en banc).

The BIA has defined a crime involving moral turpitude as having "two essential elements: [1] reprehensible conduct and [2] a culpable mental state." *Matter of Silva-Trevino*, 26 I. &

N Dec. 826, 834 (BIA 2016).  Conduct is reprehensible if it is "inherently base, vile, or depraved, and contrary to the accepted rules of morality and the duties owed between persons or to society in general." *Matter of Jimenez-Cedillo*, 27 I. & N. Dec. 1, 3 (BIA 2017) (citation omitted).[4]  Because this definition does not meaningfully delineate the elements of the offense, the BIA "has sensibly moved from trying to define the phrase itself to instead giving examples of the types of offenses that qualify as 'crimes involving moral turpitude.'" *Silva v. Barr*, 965 F.3d 724, 731 (9th Cir. 2020). We have deferred to the BIA's approach of identifying "examples of the types of offenses that qualify as crimes involving moral turpitude," when the BIA sets out the example in a published opinion.  *Id.*; *see also Marmolejo-Campos*, 558 F.3d at 909.

Applying this approach here, the BIA determined that "knowingly sponsoring or exhibiting an animal in an animal fighting venture is a crime involving moral turpitude." *Ortega-Lopez III*, 27 I. & N. Dec. at 387.  The BIA derived these elements of the offense from Congress's criminalization of this conduct in § 2156(a).  To be convicted under 7 U.S.C. § 2156(a)(1) (2006), a person must "knowingly sponsor or exhibit an animal in an animal fighting venture."[5]  The statute

---

[4] We have held that crimes involving moral turpitude fall into two categories: "[1] those involving fraud and [2] those involving grave acts of baseness or depravity." *Robles-Urrea v. Holder*, 678 F.3d 702, 708 (9th Cir. 2012).  Our definition of moral turpitude for nonfraudulent offenses is substantially the same as the BIA's.  *Silva v. Barr*, 965 F.3d 724, 731 (9th Cir. 2020).

[5] The statute also included a jurisdictional element: the government must prove that "any animal in the venture was moved in interstate or foreign commerce."  § 2156(a)(1).  Such jurisdictional elements are

defined the term "animal" to mean "any live bird, or any live dog or other mammal, except man." § 2156(g)(5) (2006) (current version at § 2156(f)(4)). It defined the term "animal fighting venture" to mean "any event which involves a fight between at least two animals and is conducted for purposes of sport, wagering, or entertainment." § 2156(g)(1) (2006) (current version at § 2156(f)(1)). Excepted from the definition of "animal fighting venture" is "any activity the primary purpose of which involves the use of one or more animals in hunting another animal or animals, such as waterfowl, bird, raccoon, or fox hunting." *Id*.[6]

The BIA explained why the language in *Nunez*, which provided a categorization of crimes involving moral turpitude, did not change its conclusion that the offense described in § 2156(a) is a crime involving moral turpitude. First, *Nunez*'s categories are "not exhaustive," as the Ninth Circuit has acknowledged. *Ortega-Lopez III*, 27 I. & N. Dec. at 386 (citing *Rivera v. Lynch*, 816 F.3d 1064, 1074 (9th Cir.

---

immaterial in applying a categorical approach. *Torres v. Lynch*, 136 S. Ct. 1619, 1622 (2016).

[6] Although there have been amendments to § 2156(a)(1) since the time of Ortega-Lopez's offense, the statute has not changed materially. Ortega-Lopez was charged with an offense committed in March 2007. In May 2007, Congress amended § 2156 to move the interstate-commerce nexus from § 2156(a)(1) to § 2156(f)(1) and to modify slightly the definitions of "animal" and "animal fighting venture." *See, e.g.*, § 2156(f)(4) (deleting the reference to "live dog" in the definition of "animal"); § 2156(f)(1) (amending the term "animal fighting venture" to include fights "to be conducted").

2016); *Nunez*, 594 F.3d at 1131 & n.4.).[7] Moreover, the BIA did not deem crimes involving moral turpitude "to be strictly limited" to the categories described in *Nunez*. *Id.* According to the BIA, the phrase "crime involving moral turpitude" was "not amenable to a clear-cut comprehensive definition that identifies certain offenses to the exclusion of all others." *Id.* The BIA observed that the Ninth Circuit had likewise found that some non-fraudulent crimes, such as incest and prostitution, are crimes involving moral turpitude even if they do not require proof of an intent to injure, an injury to persons, or a protected class of victims. *Id.* (citing *Rohit v. Holder*, 670 F.3d 1085, 1088–91 (9th Cir. 2012) (solicitation of prostitution); *Gonzales-Alvarado v. INS*, 39 F.3d 245, 246–47 (9th Cir. 1994) (incest)).[8] Based on this reasoning, the BIA concluded that, "in assessing whether an offense that does not involve fraud is a crime involving moral turpitude, the absence of an intent to injure, an injury to persons, or a protected class of victims is not determinative." *Id.* at 387. The BIA adopted this principle as a nationwide rule "because a single rule furthers the paramount need for 'uniformity in the administration of immigration laws.'" *Id*. (quoting

---

[7] Indeed, *Nunez* itself stated that it did not "suggest that *every* crime that has been held by us to involve moral turpitude falls within this grouping." 594 F.3d at 1131 n.4. Rather, *Nunez* confirmed that its generalization "does not seek to encompass every single crime that has been held to involve moral turpitude (largely because we do not think there is any meaningful characterization that can do so)." *Id.*

[8] We have also held, in caselaw not cited by *Ortega-Lopez III*, that solicitation of possession of marijuana for sale is a crime involving moral turpitude for immigration purposes. *Barragan-Lopez v. Mukasey*, 508 F.3d 899, 903 (9th Cir. 2007); *see also Atl. Richfield Co. v. Guerami*, 820 F.2d 280, 282 (9th Cir. 1987) (describing possession of heroin for sale as a crime involving moral turpitude for purposes of the Petroleum Marketing Practices Act).

*Cazarez-Gutierrez v. Ashcroft*, 382 F.3d 905, 912 (9th Cir. 2004)).

Having addressed our instruction to consider *Nunez*'s categorization of crimes involving moral turpitude, the BIA turned to providing a detailed explanation of its rationale for the conclusion that sponsoring or exhibiting an animal in an animal fighting venture is reprehensible. *Id.* at 387–89. The BIA reiterated that animal fighting entails extreme suffering (and sometimes death) of the animals involved, and gave examples of the brutal manner in which such animal fighting events were conducted. *Id.* The BIA reasoned that "the exhibition and celebration of suffering in animal fighting events" was "contrary to basic standards of decency and humanity" and "debased and brutalized the citizenry who flocked to witness such spectacles." *Id.* at 388 (quoting *Paris Adult Theatre I v. Slaton*, 413 U.S. 49, 68 n.15 (1973)). It also "desensitizes spectators to brutality and violence." *Id.*

Responding to *Ortega-Lopez II*'s concern that a crime "involving harm to chickens" appeared to be outside the "normal realm" of crimes involving moral turpitude, *Ortega Lopez II*, 834 F.3d at 1018, the BIA explained that the immorality of the conduct stemmed from its infliction of suffering on sentient beings, so it applied to animals involved in cockfighting, as well as domesticated animals. *Ortega-Lopez III*, 27 I. & N. Dec. at 388–89 & n.7. The BIA distinguished this conduct from other practices, such as hunting and food production, that are "inevitably harmful to animals" but are "necessary or acceptable to accomplish the underlying utilitarian objective." *Id.* at 389. The BIA also acknowledged that some jurisdictions in the United States do not criminalize cockfighting, but did not give this fact any weight. The BIA reaffirmed that the "clear consensus in

contemporary American society" holds "sponsoring or exhibiting the spectacle of animal suffering" to be "morally reprehensible." *Id.* at 390. Further, the BIA noted that offenses such as prostitution "that are widely viewed as morally turpitudinous" are not criminalized in every state. *Id.*

We conclude that the BIA has provided a well-reasoned basis for determining that "knowingly sponsoring or exhibiting an animal in an animal fighting venture is a crime involving moral turpitude." *Id.* at 387. Because this explanation is in a published opinion, it is entitled to deference under *Chevron*. *Ceron*, 747 F.3d at 778. We must defer to such a permissible interpretation, even if it is "not necessarily the only possible interpretation, nor even the interpretation deemed *most* reasonable by the courts." *Entergy Corp. v. Riverkeeper, Inc.*, 556 U.S. 208, 217–18 (2009). Accordingly, we conclude that a conviction under § 2156(a)(1) is categorically a crime involving moral turpitude.

Ortega-Lopez raises one additional argument. He claims that the BIA's determination regarding § 2156(a)(1) should not be applied to him, because he was convicted of an offense under this statute many years before the BIA announced its interpretation. We disagree. If "an agency consciously overrules or otherwise alters its own rule or regulation" or "expressly considers and openly departs from a circuit court decision," we must analyze whether the new rule applies to conduct that took place before the agency reached its conclusion. *See Garfias-Rodriguez v. Holder*, 702 F.3d 504, 518–19 (9th Cir. 2013) (en banc); *accord Olivas-Motta v. Whitaker*, 910 F.3d 1271, 1277 (9th Cir. 2018). We sometimes refer to this inquiry as a retroactivity analysis. *Garfias-Rodriguez*, 702 F.3d at 517. We do not engage in

such an analysis here, however, because the BIA did not change the law.  It is undisputed that the BIA did not overrule its precedent.  Nor did the BIA reach a conclusion "that is contrary to a ruling previously set forth by a court of appeals."  *Id.* at 516.  Although the BIA concluded that *Nunez*'s categories were not exclusive, *Nunez* did not purport to provide a limiting definition of crimes involving moral turpitude and expressly stated that it was not doing so. 594 F.3d at 1131 n. 4.  The BIA's case-by-case application of the categorical approach here does not constitute a change in the law "any more than a judicial determination construing and applying a statute to a case in hand."  *Olivas-Motta*, 910 F.3d at 1278 (internal quotation marks omitted) (quoting *Manhattan Gen. Equip. Co. v. Comm'r*, 297 U.S. 129, 135 (1936)).  With no change in the law, there are no retroactivity concerns, and therefore Ortega-Lopez's argument fails.**[9]**

---

**[9]** In his reply brief, Ortega-Lopez argues for the first time that his offense is not a categorical match for a crime involving moral turpitude, because he was convicted of aiding and abetting under 18 U.S.C. § 2(a). This argument is meritless.  Aiding and abetting is not a separate offense; it is "simply one means of committing" the underlying crime.  *United States v. Garcia*, 400 F.3d 816, 820 (9th Cir. 2005).  There is no distinction between aiding and abetting liability and liability as a principal under federal law.  *See Roman-Suaste v. Holder*, 766 F.3d 1035, 1039–40 (9th Cir. 2014) (citing 18 U.S.C. § 2).  A person who aids or abets a crime "falls, like a principal, within the scope" of the generic definition of the underlying offense.  *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 189 (2007).  We look to the "underlying crimes in determining whether convictions for inchoate offenses constitute crimes involving moral turpitude."  *Barragan-Lopez*, 508 F.3d at 903 (solicitation); *accord McNaughton v. INS*, 612 F.2d 457, 459 (9th Cir. 1980) (per curiam) (conspiracy). Therefore, Ortega-Lopez's aiding and abetting liability does not alter the categorical approach analysis here.

In sum, we defer to the BIA's permissible conclusion that knowingly sponsoring or exhibiting an animal in an animal fighting venture is a crime involving moral turpitude, and we reject Ortega-Lopez's arguments to the contrary. Because no dispute exists that a sentence of a year or longer could be imposed for a violation of § 2156(a)(1), we determine that a conviction under this section was a conviction of a crime involving moral turpitude for which a sentence of a year or longer may be imposed.[10]

## B

We next turn to the question whether the BIA erred in concluding that Ortega-Lopez had been "convicted of an offense under section . . . 1227(a)(2)," § 1229b(b)(1)(C), because the government failed to prove that the crime was "committed within five years . . . after the date of admission," § 1227(a)(2)(A)(i).

## 1

We again begin with some background. To be eligible for cancellation of removal under § 1229b(b), the alien must not have "been convicted of an offense under section 1182(a)(2), 1227(a)(2), or 1227(a)(3)," among other things. 8 U.S.C. § 1229b(b)(1). In *Gonzalez-Gonzalez v. Ashcroft*, we

---

[10] Ortega-Lopez argues that the phrase "crime involving moral turpitude" is unconstitutionally vague. We have repeatedly rejected this argument on the ground that it is foreclosed by both Supreme Court and Ninth Circuit precedent. *See, e.g.*, *Islas-Veloz v. Whitaker*, 914 F.3d 1249, 1251 (9th Cir. 2019), *cert. denied sub nom.*, *Islas-Veloz v. Barr*, 140 S. Ct. 2704 (2020); *Martinez-de Ryan v. Whitaker*, 909 F.3d 247, 251–52 (9th Cir. 2018), *cert. denied sub nom.*, *Martinez-de Ryan v. Barr*, 140 S. Ct. 134 (2019). Bound by that precedent, we reject the argument again.

concluded that "the plain language of § 1229b indicates that it should be read to cross-reference a list of offenses in three statutes, rather than the statutes as a whole." 390 F.3d 649, 652 (9th Cir. 2004). Moreover, we held that "[t]he most logical reading of 'convicted of an offense under' is that reached by the BIA: 'convicted of an offense *described under*' each of the three sections." *Id*. We reasoned that an alien cannot be "convicted under" § 1227, because it is not a criminal statute. *Id.* Rather, the elements of § 1227 are "prerequisites to deportability." *Id.* Because the cross-reference in § 1229b(b) focused on the list of criminal offenses (not the other prerequisites to deportability), we held it was irrelevant whether the alien seeking cancellation of removal was in the country unlawfully (and therefore subject to grounds of inadmissibility) or was in the country lawfully (and therefore subject to grounds of deportability). *Id.* at 651–53. Regardless of the alien's status, the alien did not qualify for cancellation of removal if the alien had been convicted of an offense listed in any of the three statutes. *Id.*

In light of *Gonzalez-Gonzalez*, the BIA subsequently held that the cross-reference in § 1229b(b)(1)(C) unambiguously incorporated "only language specifically pertaining to the criminal offense, such as the offense itself and the sentence imposed or potentially imposed." *Cortez Canales*, 25 I. & N. Dec. at 307–08. In *Cortez Canales*, the BIA rejected the alien's argument that § 1229b(b)(1)(C) also incorporated language in § 1227(a)(2) "pertaining only to aspects of immigration law, such as the requirement that the alien's crime be committed 'within five years . . . after the date of admission.'" *Id*. According to the BIA, this exclusion of immigration-related elements "clearly follows" from the conclusion in *Gonzales-Gonzales* that "the plain language of section [1229b(b)(1)(C)] should be read to cross-reference a

list of offenses in three statutes, rather than the statutes as a whole." *Id.* at 308.

To further support this conclusion, the BIA compared the cross-reference in § 1229b(b)(1)(C) to the cross-reference in § 1229b(d)(1) (the stop-time rule), which relates to an offense "that renders the alien inadmissible to the United States under section 1182(a)(2) of this title or removable from the United States under section 1227(a)(2) or 1227(a)(4) of this title." The BIA noted that the stop-time rule showed Congress knew "how to draft statutory language requiring an alien to be inadmissible or removable under a specific charge" in a cross-referenced section. *Cortez Canales*, 25 I. & N. Dec. at 308. The BIA concluded that, "[s]ince Congress did not include language requiring that an alien be inadmissible or removable in section [1229b(b)(1)(C)], it is clear that it did not intend for the immigration-related elements" of the three cross-referenced statutes to be incorporated in § 1229b(b)(1)(C). *Id.* The BIA explained in the alternative that, "even if the language of [§ 1229b(b)(1)(C)] were found to be ambiguous, we would interpret it in the same manner." *Id.*

In *Lozano-Arredondo*, we addressed the question whether the cross-reference in § 1229b(b)(1)(C) to an "offense under" § 1227(a)(2) incorporates only the offense-related elements or also included the immigration-related elements, namely, that an alien is deportable if the alien commits a listed offense "more than five years after his admission to the United States." 866 F.3d at 1085. Although we acknowledged the BIA's decision in *Cortez-Canales*, we declined to defer to it because the "BIA erroneously concluded Congress' intent had been clearly expressed at *Chevron* step one, and thus did not exercise its expertise and discretion in interpreting the

statute at *Chevron* step two." *Id.* (citation omitted). Even though the BIA explained it would have reached the same conclusion if the cross-reference were ambiguous, *Lozano-Arredondo* classified this statement as an insufficient "one-sentence caveat" that failed to exercise the BIA's "expertise and discretion in interpreting the statute." *Id.* at 1093 (quoting *Gila River Indian Cmty. v. United States*, 729 F.3d 1139, 1149, 1150 (9th Cir. 2013)).

Contrary to the BIA's view, *Lozano-Arredondo* deemed the cross-reference in § 1229b(b)(1)(C) to be ambiguous and susceptible to several interpretations. *Id.* at 1089. *Lozano-Arredondo* explained that the cross-reference in § 1229b(b)(1)(C) could refer to "(1) only the criminal offense itself—a crime involving moral turpitude; (2) the criminal offense plus one additional element of the deportable offense (i.e., the criminal offense plus either the within-five-years limitation or the sentence-length limitation); or (3) all three elements of the deportable offense." *Id.* at 1085, 1089–90.

*Lozano-Arredondo* suggested that the "all three elements" interpretation was the most reasonable. *Id.* at 1091. It noted that *Gonzales-Gonzales* "did not foreclose" an interpretation of the cross-reference in § 1229b(b)(1)(C) that incorporates the element in § 1227(a)(2)(A)(i) requiring the crime to have been "committed within five years . . . after the date of admission." *Lozano-Arredondo*, 866 F.3d at 1090. *Lozano-Arredondo* also noted its view that the legislative history of § 1229b(b)(1)(C) "indicates Congress understood § 1229b(b)(1)(C) to incorporate all elements of the deportable offenses under § 1227(a)(2)," including the five year requirement. *Id.* at 1090–91. In reaching this conclusion, *Lozano-Arredondo* relied on a House Conference Report which described § 1229b(b)(1) as follows:

"Section 1229b(b)(1) provides that the Attorney General may cancel removal in the case of an alien who has at no time been convicted of an offense that would render the alien inadmissible under § 1182(a)(2)(A) or deportable under § 1227(a)(2)." *Id.* (cleaned up) (quoting H.R. Rep. No. 104-828, at 213 (1996) (Conf. Rep.), 1996 WL 563320).

Under the all-three-elements interpretation, an alien who had committed a crime involving moral turpitude would still be eligible for cancellation of removal if the crime had been committed more than five years after the date of admission. *Lozano-Arredondo* acknowledged that some aliens seeking cancellation of removal were never admitted and, if the cross-reference in § 1229b(b)(1)(C) incorporated the within-five-years element, aliens who were in the country unlawfully "could *never* be deemed ineligible for cancellation under § 1227(a)(2)(A)(i)." 866 F.3d at 1092. Such a result "would be contrary to our holding in *Gonzalez-Gonzalez* that offenses under § 1227(a)(2) *do* apply to non-admitted aliens in the cancellation context." *Id.* Excluding the within-five-years element altogether, as the BIA had done, was permissible to avoid this conflict. But *Lozano-Arredondo* proposed a different option: The BIA could interpret "admission" in this limited context to mean "physical 'entry' when applied to an alien who has not been 'admitted'" as defined in the INA. *Id.*

Without holding that any one interpretation was the "only reasonable interpretation," *Lozano-Arredondo* "decide[d] only that the inclusion of the word 'admission' as part of the within-five-years element does not compel the conclusion that Congress intended to exclude this element from the 'offense under' § 1227(a)(2)(A)(I)." 866 F.3d at 1092–93. Given its holding that § 1229b(b)(1)(C) was ambiguous, *Lozano-Arredondo* stated that "[t]he BIA erred at *Chevron*

step one by concluding Congress clearly intended not to incorporate the within-five-years element of § 1227(a)(2)(A)(i)." *Id.* at 1093. Therefore, *Lozano-Arredondo* declined to defer to *Cortez Canales* and remanded the case to the BIA for the BIA to "reconsider its interpretation of the phrase 'offense under' in § 1229b(b)(1)(C)." *Id.*

2

The BIA's analysis in this case responded to *Lozano-Arredondo*'s ruling that the cross-reference in § 1229b(b)(1)(C) to "an offense under" § 1227(a)(2) was ambiguous. The BIA first restated its prior interpretation in *Cortez Canales*, that the cross-reference in § 1229b(b)(1)(C) incorporated only the offense itself and the sentence imposed or potentially imposed. *Ortega-Lopez III*, 27 I. & N. Dec. at 392. The BIA then turned to the potential alternative interpretation suggested by *Lozano-Arredondo*, that § 1229b(b)(1)(C) incorporated the within-five-years element and simultaneously altered the meaning of admission "as that term is used throughout [section 1227(a)]" to mean "entry." *Id.* The BIA gave a reasoned explanation for declining to adopt this alternative interpretation and for reaffirming the interpretation it had adopted in *Cortez Canales*.

First, the BIA noted that "one of the overarching themes" of IIRIRA "was to replace the term 'entry' with the term 'admission,' thereby providing that a person who had entered the United States without meeting the specific statutory requirements for an admission would be subject to grounds of inadmissibility, rather than deportability." *Id.* at 392–93. Drawing on the explicit distinctions between "entry" and

"admission" that were made in IIRIRA amendments to the INA, the BIA held that "[c]onstruing the word 'admission' to mean 'entry' would be contrary to that overall purpose." *Id.* at 393. For instance, "Congress demonstrated that it considered the terms to have different meanings because it retained the term 'entry' in certain provisions." *Id.* (citing 8 U.S.C. § 1227(a)(1)(E)); *see also*, 8 U.S.C. § 1101(13)(A) (defining "admission" to mean "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer"). The BIA noted that we had previously rejected the argument that the terms "entry" and "admission" were interchangeable. *Ortega-Lopez III*, 27 I. & N. Dec. at 397 (citing *Xi*, 298 F.3d at 838).

The BIA also reasoned that a statute's cross-reference to a different statutory section functions as an "incorporation" of the referenced section and not as a "*modification*" of the referenced section. *Id.* at 393 (citing *Torres v. Lynch*, 136 S. Ct. 1619, 1626 n.5 (2016)). Thus, the "most reasonable reading" of the cross-reference in § 1229b(b)(1)(C) to an "offense under" § 1227(a)(2) was that § 1229b(b)(1)(C) incorporated the offense-related elements of § 1227(a)(2) but not the immigration-related elements. *Id.* (citing *Torres*, 136 S. Ct. 1619, as an example of a partial incorporation by reference in the INA).

The BIA rejected the suggestion that this reading would render superfluous the within-five-years element in § 1227(a)(2). *Id.* at 393–94. The BIA instead explained that its interpretation "actually avoids rendering language in the cancellation of removal statute superfluous," because the BIA

recognized the difference between lists of offenses that prevent an alien from being eligible for relief from removal and the prerequisites that render an alien removable. *Id.* at 394.

Second, the BIA evaluated the legislative history cited in *Lozano-Arredondo* and concluded that it neither undermined *Cortez Canales* nor supported an alternative interpretation. *Id.* The BIA determined that, notwithstanding the language in the House Conference Report on IIRIRA, it would be unreasonable to conclude that Congress intended to require that an alien who had never been admitted (and was subject to grounds of inadmissibility, not grounds of deportability) was deportable for purposes of cancellation of removal, yet not actually deportable "in the sense that the term is normally understood." *Id.* at 395. Moreover, Congress did not adopt the specific language set out in the House Conference Report (and quoted in *Lozano-Arredondo*), even though it had adopted similar language for the stop-time rule. *Id.* at 395–96.

Based on its reasoned analysis of the statutory language, and after giving detailed consideration to *Lozano-Arredondo* and relevant legislative history, the BIA concluded again that the best interpretation of § 1229b(b)(1)(C) "is that the 'offense under' language is a limited cross-reference, one that incorporates only the offense-specific characteristics of the cross-referenced sections." *Id.* at 397. Therefore, the BIA reaffirmed its decision in *Cortez Canales.*

Presented with ambiguous statutory language, "we may not supply the interpretation of the statute we think best (as we would without an agency pronouncement)." *Marmolejo-Campos*, 558 F.3d at 908. We are instead limited under

*Chevron* to determining whether the agency's interpretation is permissible and "not clearly contrary to the plain meaning of the statute." *Parrilla*, 414 F.3d at 1041. Here, *Lozano-Arredondo* recognized that the cross-reference in § 1229b(b)(1)(C) is ambiguous and could be interpreted as referring only to the "criminal offense plus . . . the sentence-length limitation," 866 F.3d at 1085, 1089–90. And although we offered our own possible interpretation of the statute, we expressly noted that "we are not yet prepared to hold it is the only reasonable interpretation" and acknowledged that our suggested interpretation "goes beyond the ordinary immigration definition of admission." *Id.* at 1092–93. We also cautioned the BIA that holding constant the meaning of "admission" in § 1227(a)(2) would require "ignoring either the legislative history or our holding in *Gonzalez-Gonzales* that § 1227(a)(2) applies both to admitted and non-admitted aliens." *Id.* at 1092.

The BIA ignored neither legislative history nor our prior holding in *Gonzales-Gonzales*. It grappled with legislative history before it declined to adopt *Lozano-Arredondo*'s alternative approach that would require "reconstruing a cross-referenced statute for the purpose of resolving an ambiguity in the referencing provision." *Ortega-Lopez III*, 27 I. & N. Dec. at 393. The BIA instead favored a reasonable approach that interpreted "an ambiguous statute in a manner that is consistent with its statutory cross-reference." *Id.*

We conclude that the BIA adopted a permissible interpretation of the statute based on its expertise and discretion. It is reasonable to conclude that the offenses described under the cross-referenced sections "apply to all aliens—regardless of admission status—for purposes of § 1229b(b)(1)(C)'s bar on cancellation of removal." *Lozano-*

*Arredondo*, 866 F.3d at 1090 (citing *Gonzales-Gonzales*, 390 F.3d at 652). It also reasonable to conclude that ambiguous statutory cross-references will not always incorporate every component of the referenced section. *See Torres*, 136 S. Ct. at 1625, 1634. And, in light of the statutory text and legislative history, it was reasonable for the BIA to reject an interpretation that would require a redefinition of a statutorily defined term, "admission," that was central to the changes made by IIRIRA to the INA. Thus, given that *Lozano-Arredondo* determined that § 1229b(b)(1)(C) was susceptible to the BIA's interpretation and the BIA's interpretation is not clearly contrary to the plain meaning of the statute, we defer to the BIA's interpretation.[11]

---

[11] Ortega-Lopez also raises an argument based on *Matter of Garcia-Hernandez*, 23 I. & N. Dec. 590, 593 (BIA 2003). *Garcia-Hernandez* held that § 1229b(b)(1)(C) incorporated the "petty-offense" exception set forth in § 1182(a)(2)(A)(ii)(I), so that an alien who has been convicted of a crime involving moral turpitude that falls within this exception is not ineligible for cancellation of removal. In explaining its reasoning, *Garcia-Hernandez* stated that it "view[ed] the plain language of [§ 1229b(b)(1)(C)] as incorporating the entirety of [§ 1182(a)(2)], including the exception for petty offenses set forth therein." This broad statement has been abrogated in part by *Gonzalez-Gonzalez*, which held that "[t]he plain language of § 1229b indicates that it should be read to cross-reference a list of offenses in three statutes, rather than the statutes as a whole." 390 F.3d at 652. In light of this ruling, Ortega-Lopez cannot rely on *Garcia-Hernandez* for the principle that § 1229b incorporates § 1227(a)(2) as a whole (including the within-five years element). Therefore, we reject Ortega-Lopez's argument that the BIA's interpretation here conflicts with *Garcia-Hernandez*.

IV

In sum, we defer to the BIA's conclusion that knowingly sponsoring or exhibiting an animal in an animal fighting venture is a crime involving moral turpitude described under § 1227(a)(2).  We also defer to the BIA's conclusion that, pursuant to the cross-reference in § 1229b(b)(1)(C), an alien is ineligible for cancellation of removal if the alien has been convicted of a crime involving moral turpitude for which a sentence of one year or more may be imposed, regardless whether the alien meets the immigration prerequisites for inadmissibility or deportability.  Because Ortega-Lopez was convicted of a violation of § 2156(a)(1), a crime involving moral turpitude, he is ineligible for cancellation of removal.

**PETITION DENIED**.